STATE of South Dakota, Plaintiff
and Appellee,

v.

Ruben M. WURTZ, Defendant
and Appellant.

No. 16090.

Supreme Court of South Dakota.

Considered on Briefs Sept. 1, 1988.

Decided March 1, 1989.

Frank Geaghan, Asst. Atty. Gen., Pierre, for plaintiff and appellee; Roger A. Tellinghuisen, Atty. Gen., Pierre, on the brief.

Richard Braithwaite of Braithwaite Law Offices, Sioux Falls, for defendant and appellant.

HENDERSON, Justice.

## PROCEDURAL HISTORY/SENTENCING/AFFIRMANCE

Defendant Ruben M. Wurtz (Wurtz) was convicted of four counts of sexual contact with a minor (SDCL 22–22–7) after a jury trial in the circuit court for Edmunds County.* The trial court sentenced Wurtz to four concurrent terms, of four years each, in the State Penitentiary. Wurtz appeals, alleging 1) that the assistance provided by his trial counsel was ineffective, and 2) that his conviction on four identically worded counts violated constitutional prohibitions against double jeopardy. We affirm. For posterity, it should be noted that counsel on appeal was not trial counsel.

## FACTS

In December 1986, Wurtz, a mechanic, lived in the basement of a farmhouse owned by his employer. The alleged victim of divers sexual contacts (by Wurtz) was a fifteen-year-old boy, T.B., who, with his family, resided in the upstairs portion of the house from December 1986 until April 1, 1987. T.B. and Wurtz associated with each other extensively during T.B.'s stay there.

—Incident One—

Shortly after T.B. and his family moved to another residence, he informed his mother of four sexual incidents between him and Wurtz. According to T.B., the first incident occurred in January 1987, when he and Wurtz were alone in a machine shop at the farm. Wurtz, who had been drinking, prevented T.B. from leaving, grabbed his arm and pulled him to a couch. When on the couch, Wurtz lay on top of him, undid T.B.'s pants, and proceeded to massage T.B.'s penis. During this activity, Wurtz had an erection. At one point, T.B. attempted to knee Wurtz in the groin, and Wurtz, angered, told him "stop or I'll just do it more." Wurtz apologized for his actions two days later.

—Incident Two—

T.B. testified that the second incident occurred on a cold night about two weeks later. He and Wurtz were in a pickup truck on a county road, a mile from the farm, with T.B. driving. Wurtz stopped the truck by extending his leg across the cab and hitting the brake. T.B. was subjected to similar treatment as in the first incident, with Wurtz undoing T.B.'s pants and playing with his penis. Wurtz, at one point, said "Let me try to make you a hard-on."

—Incident Three—

The third sexual encounter happened a few weeks later in the farmhouse basement. T.B., this time wearing sweat pants, was forced onto his back, and resisted unsuccessfully. The string on T.B.'s sweat pants was torn in the process. Wurtz succeeded in getting his hand onto T.B.'s penis, and played with it.

—Incident Four—

The last encounter, in T.B.'s narrative, occurred on the night of a steak fry party. In the machine shop, Wurtz grabbed T.B., forced him onto the couch again, and then grabbed T.B.'s hand. Wurtz, essentially, masturbated himself with T.B.'s hand, to the point of ejaculation, after which he let T.B. leave. T.B., at trial, was uncertain as to the date this event occurred, and linked it only to the night of the steak fry.

T.B.'s explanation for his continued association with Wurtz was that Wurtz had

---

* Questions of double jeopardy or vagueness of information were not raised below, nor was there a motion for dismissal of identical counts. A bill of particulars was not requested. Factual individuality of the four counts was vividly detailed at the preliminary hearing. It does not appear that Wurtz was taken by surprise at trial.

taught him about vehicle repair, which he enjoyed. His mother testified that T.B. had great difficulty in relating these events to her, crying often.

In an Information filed September 22, 1987, Wurtz was charged with four separate counts of sexual contact with a child, under SDCL 22–22–7, which provides:

Any person, fourteen years of age or older, who knowingly engages in sexual contact with another person, other than his spouse when such other person is under the age of sixteen years is guilty of a Class 4 felony. If the actor is less than three years older than the other person, he is guilty of a Class 1 misdemeanor.

The parts of the Information relevant to this appeal read as follows:

## COUNT ONE

### (FIRST INCIDENT)

That between December 15, 1986 and March 1, 1987, in the County of Edmunds, State of South Dakota, Rueben [sic] M. Wurtz, did commit the public offense of sexual contact with child under 16 in violation of SDCL 22–22–7 in that he did knowingly engage in sexual contact with [T.B.], a child under the age of 16 years, a Class Four felony.

## COUNT TWO

### (SECOND INCIDENT)

That between December 15, 1986 and March 1, 1987, in the County of Edmunds, State of South Dakota, Rueben [sic] M. Wurtz, did commit the public offense of sexual contact with child under 16 in violation of SDCL 22–22–7 in that he did knowingly engage in sexual contact with [T.B.], a child under the age of 16 years, a Class Four felony.

## COUNT THREE

### (THIRD INCIDENT)

That between December 15, 1986 and March 1, 1987, in the County of Edmunds, State of South Dakota, Rueben

[sic] M. Wurtz, did commit the public offense of sexual contact with child under 16 in violation of SDCL 22–22–7 in that he did knowingly engage in sexual contact with [T.B.], a child under the age of 16 years, a Class Four felony.

## COUNT FOUR

### (FOURTH INCIDENT)

That between December 15, 1986 and March 1, 1987, in the County of Edmunds, State of South Dakota, Rueben [sic] M. Wurtz, did commit the public offense of sexual contact with child under 16 in violation of SDCL 22–22–7 in that he did knowingly engage in sexual contact with [T.B.], a child under the age of 16 years, a Class Four felony contrary to the statute in such case made and provided against the peace and dignity of the State of South Dakota.

An Amended Information was filed at a pretrial conference, on November 17, 1987. This new document, to which defense counsel did not object, extended the time frame of each of the alleged offenses for an additional month (from December 15, 1986 to April 1, 1987).

## DECISION

Wurtz first claims that he was not provided with adequate and effective assistance of counsel, which is guaranteed by both Article VI, § 7, of the South Dakota Constitution, and the Sixth Amendment to the United States Constitution. Our standard for evaluating such claims is derived from *Strickland v. Washington*, 466 U.S. 668, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984), where the United States Supreme Court enunciated two requirements that a defendant must meet to be successful:

First, ... that counsel's performance was deficient. This requires showing that counsel made errors so serious that counsel was not functioning as the "counsel" guaranteed the defendant by the Sixth Amendment. Second, ... that the deficient performance prejudiced the defense. This requires showing that counsel's errors were so serious as to

deprive the defendant of a fair trial, a trial whose result is reliable. *Strickland,* 466 U.S. at 687, 104 S.Ct. at 2064, 80 L.Ed.2d at 693. *See Woods v. Solem,* 405 N.W.2d 59, 61 (S.D.1987).

Wurtz, in this case, faces an additional hurdle, in that this Court has repeatedly held that ineffectiveness of counsel is an issue best raised on an appeal from habeas corpus proceedings unless trial counsel's actions amount to plain error. *State v. Hammond,* 357 N.W.2d 278, 279 (S.D. 1984).

> Generally, this court has considered the issue of inadequacy of counsel only on appeal from post-conviction hearings, but where the defense at trial was so ineffective and counsel's representation so casual that the trial record evidences a manifest usurpation of appellant's constitutional rights, the claim of ineffective assistance of counsel will be reviewed on direct appeal.

*State v. Phipps,* 318 N.W.2d 128, 131 (S.D. 1982); *State v. McBride,* 296 N.W.2d 551 (S.D.1980). Here, the alleged ineffectiveness is based on three aspects of defense counsel's performance: 1) Failure to impeach the testimony of the victim regarding three of the incidents; 2) failure to challenge the vagueness of the indictment; and 3) failure to move for dismissal of Counts Two, Three, and Four on the grounds of double jeopardy.

■ We consider Wurtz' first allegation of ineffectiveness only to determine whether his counsel's conduct constituted plain error. His second and third allegations, however, cannot be meaningfully analyzed without consideration of the merits of his separate double jeopardy argument, which we reject on its merits. Obviously, as they are conceptually unsound, they cannot form the basis of an ineffective counsel claim. *See State v. Loop,* 422 N.W.2d 420, 423 (S.D.1988).

■ The arguments regarding cross-examination in this case are within the realm of trial tactics. This Court's function is not to second-guess the tactical decisions of trial counsel, nor will we substitute our own theoretical judgment for that of the trial attorney. *Woods,* 405 N.W.2d at 62; *Jones v. State,* 353 N.W.2d 781, 784 (S.D. 1984). The victim, a boy with, by his own testimony, a learning disability ("It takes me longer to understand things") could stir up jurors' emotions on cross-examination on unessential details. In *Jibben v. State,* 343 N.W.2d 788 (S.D.1984), we observed that a minor victim of incest, because of her age and the nature of the offense, was "likely to win sympathy as a complaining witness." *Jibben,* 343 N.W.2d at 789–90. As it was, defense counsel's cross-examination was extensive, and exposed numerous gaps in T.B.'s memory.

Wurtz' argument that his counsel should have attacked T.B.'s testimony regarding the truck incident is of little merit, as the testimony he would use to impeach was possibly more damaging to Wurtz than it would be to the State. The seriousness of T.B.'s confusion as to dates is undercut by the fact that time is not necessarily a material element of SDCL 22-22-7. *See State v. Swallow,* 350 N.W.2d 606, 608 (S.D. 1984).

■ Vagueness as to the charges on the information, and the related question of double jeopardy, however, are Wurtz' key arguments. The lack of specificity as to time is no grounds for reversal, as *Swallow* indicates:

> [A] review of the information reveals that it is certainly not precise as to the dates of the alleged offenses. All four counts of the information state that Swallow "did, between October, 1981, and March, 1982," engage in certain prohibited sexual activity with minors.

*Swallow,* 350 N.W.2d at 608. This Court held the information to be specific enough:

> We also take note of the nature of the offenses charged, and the fact that they involve minor children. The Minnesota Supreme Court, in dealing with child molestation cases, has stated that although an information should be as specific as possible with respect to time, it is not always possible to know with certainty when the offenses occurred; this is especially true in cases where there is a mi-

nor victim who does not immediately complain to the authorities; thus, specificity of time is not always required in the information. *State v. Bird,* 292 N.W.2d 3 (Minn.1980); *State v. Waukazo,* 269 N.W.2d 373 (Minn.1978). We find this rationale to be convincing. Therefore, given the ages of the children involved and the time span over which the acts took place, we hold that the dates in the information were sufficient to meet the reasonable certainty requirement.

*Swallow,* 350 N.W.2d at 608.

" 'An information is sufficient if it [apprises] the accused of the nature of the accusation against him with reasonable certainty so that he may prepare a defense and be protected from double jeopardy.' " *State v. Loop,* 422 N.W.2d 420, 422 (S.D. 1988) (brackets in original; citation omitted). Another formulation is that an information is sufficient if it "(1) contains the elements of the offense charged and fairly informs the defendant of the charge against him, and (2) enables him to plead an acquittal of the conviction in bar of future prosecutions." *State v. Mouttet,* 372 N.W.2d 121, 123 (S.D.1985). The information is generally adequate if it follows the language of the statute or its equivalent. *Id.* at 123. *See also State v. Lange,* 82 S.D. 666, 152 N.W.2d 635 (1967). Each count, individually, was sufficient in this case.

▮ Important to our consideration of this issue is that all four counts were identical. Thus, Wurtz argues that each of the four counts facing him were the "same offense" within the double jeopardy clauses of the state and federal constitutions. We disagree.

Generally, a challenge to an information may not be presented for the first time on appeal. SDCL 23A–8–3(3); *State v. Lachowitzer,* 314 N.W.2d 307, 309 (S.D.1982). Ofttimes, we have stated that the trial court must be given an opportunity to correct any claimed error before this Court will review it on appeal. *Mouttet,* 372 N.W.2d at 122. However, this Court may still review this issue under the plain error doctrine, were we to assume that plain error existed before us. We recognized the plain error rule in *State v. Brammer,* 304 N.W.2d 111 (S.D.1981). Due to the identical language in each count, and recognizing that this is a case of first impression in this state, we deem it necessary to rule on the sufficiency of the information from the standpoint of the double jeopardy attack.

▮ In our analysis of this pleading and the constitutional confrontation precipitated thereby, we note that the amended information specifically alleged FIRST INCIDENT, SECOND INCIDENT, THIRD INCIDENT, and FOURTH INCIDENT. Moreover, the record reveals that there was a different factual scenario in each of the separate four incidents. We further note that the opening instruction to the jury related that there were four alleged *separate* occasions of sexual contact upon this minor. Jury instructions 6 and 7 related to "offenses" and "dates." Instruction 7 required separate verdicts of guilty or not guilty for each count. Instruction 25 also required individual decisions upon "each" of the counts. A separate decision for the jury as to whether or not defendant was not guilty or guilty was placed upon the verdict form for each particular count. Concerning Wurtz' assertions that the amended information was insufficient to enable him to plead an acquittal of the conviction or convictions as a bar to future prosecution or prosecutions, we adopt the reasoning of decisions in our sister state of Nebraska. The rule simply is this: A party may proceed with proof, outside of the information itself, to determine the charge which the conviction was based upon in order to raise it as a bar to a subsequent prosecution. *Cowan v. State,* 140 Neb. 837, 839–40, 2 N.W.2d 111, 113 (1942). An appellant may allege and prove facts outside of the record in support of a plea of former adjudication. He need not derive full protection only from the indictment or information. *State v. McGee,* 221 Neb. 557, 561, 378 N.W.2d 674, 677 (1985); *State v. Piskorski,* 218 Neb. 543, 545–46, 357 N.W.2d 206, 209 (1984).

▮ Regarding notice to Wurtz himself, investigative reports were furnished to the

defense, prior to trial, which clearly apprised Wurtz of the specific acts the State was relying upon to prove counts one, two, three, and four. We strongly believe that Wurtz was totally aware of that with which he was charged, and he was presented with the State's evidence thereof in advance of trial. Therefore, he fully understood the nature of the charges and was able to fairly prepare a defense to this information, although the information as amended did not include all of the lurid details. The defense was aware of the factual individuality of the four counts by all of the detailed evidence at Wurtz' preliminary hearing. Surely, this appellant was not surprised nor ambushed through lack of notice. His double jeopardy argument is not affected by the lack of notice aspect as we review this case in its full particulars.

All four convictions and sentences arising therefrom affirmed.

WUEST, C.J., MORGAN and MILLER, JJ., concur.

SABERS, J., concurs in result.

SABERS, Justice (concurring in result).

Although I generally concur in the majority decision, I would not address the merits of the ineffective assistance of counsel claim. As the majority notes, we have repeatedly held that such issues are best addressed in habeas corpus. *State v. Picotte*, 416 N.W.2d 881 (S.D.1987); *State v. Schulz*, 409 N.W.2d 655 (S.D.1987); *State v. Aliberti*, 401 N.W.2d 729 (S.D.1987); *State v. Davis*, 401 N.W.2d 721 (S.D.1987); *State v. Anderson*, 387 N.W.2d 544 (S.D. 1986); *State v. Dornbusch*, 384 N.W.2d 682 (S.D.1986); *State v. Means*, 363 N.W.2d 565 (S.D.1985); *State v. Hammond*, 357 N.W.2d 278 (S.D.1984); *State v. Tchida*, 347 N.W.2d 338 (S.D.1984); *State v. Iron Shell*, 336 N.W.2d 372 (S.D.1983); *State v. Phipps*, 318 N.W.2d 128 (S.D.1982); *State v. McBride*, 296 N.W.2d 551 (S.D.1980). There is no compelling reason to depart from that practice here.