STATE of South Dakota, Plaintiff and Appellee,

v.

James BAILEY, Defendant and Appellant.

No. 16911.

Supreme Court of South Dakota.

Considered on Briefs Sept. 19, 1990.

Decided Jan. 2, 1991.

Frank E. Geaghan, Asst. Atty. Gen., Pierre, for plaintiff and appellee; Roger A. Tellinghuisen, Atty. Gen., Pierre, on brief.

Gary G. Colbath of Banks, Johnson, Johnson, Colbath & Huffman, P.C., Rapid City, for defendant and appellant.

SABERS, Justice.

Bailey pled guilty to a charge of intentional damage to property and received a suspended sentence. He appeals the revocation of his probation based on aggravated assault.

## FACTS

On January 18, 1989, Bailey was arraigned on a felony charge of intentionally damaging property at a Belle Fourche motel in violation of SDCL 22–34–1. Bailey pled guilty. The court suspended imposition of sentence and placed Bailey on 5 years probation on the condition that he "obey all federal and state laws and municipal ordinances" and "take medication as prescribed by Ft. Meade."

The purpose of the medication Bailey was receiving from the Ft. Meade Veteran's Administration Medical Center was to control the onset of psychotic episodes caused by a bipolar mood disorder. Bailey would periodically receive injections of the drug Haldol at Ft. Meade, and, in the interim between Haldol injections, would take the drug Ativan orally. The property damage at the Belle Fourche motel was associated with Bailey's failure to take his prescribed medication.

On April 18, 1989, Bailey began to feel the onset of another psychotic episode. His next Haldol injection was not scheduled until the following day and the Ativan was not working. Bailey attempted to persuade emergency room personnel at a Spearfish hospital and the Ft. Meade V.A. Center to administer his Haldol injection early, but both refused. The next day Bailey was arrested for disorderly conduct during a loud public argument with a friend in Spearfish. On the night of his arrest, Bailey was without any medication and attacked a guard at the Lawrence County Jail in Deadwood. Bailey was indicted for aggravated assault against the jailer in violation of SDCL 22–18–1.1(3).

On May 4, 1989, the court services officer assigned to supervise Bailey's probation on the earlier damage to property charge petitioned the court to revoke Bailey's probation based on the aggravated assault charge. During the summer of 1989, Bailey was examined by Dr. Johnson of the South Dakota Human Services Center in Yankton pursuant to a court order, and Dr. Manlove of Rapid City, at the request of Bailey's counsel. Both psychiatrists diagnosed Bailey's bipolar mood disorder, and both reported that he was capable of assisting in his own defense and knew right from wrong on April 19.

Following a Probation Revocation Hearing on September 22, 1989, the court ruled that Bailey violated the terms of his probation. Bailey was evaluated a second time at the Human Services Center in Yankton to determine his competence. The examining psychiatrist, Dr. Lee, affirmed that Bailey was competent to stand trial.

On October 30, 1989, Bailey was permitted to withdraw his January 18, 1989, guilty plea to the property damage charge and to substitute a plea of guilty but mentally ill. SDCL 23A-7-2(5), 23A-27-38. The court revoked Bailey's probation, sentenced him to four years' imprisonment for intentional damage to property in violation of SDCL 22-34-1, and ordered that he receive psychiatric help while in prison consistent with the provisions of SDCL 23A-27-38. The court entered Supplemental Findings of Fact and Conclusions of Law to the effect that Bailey was mentally ill—but neither insane nor incompetent to stand trial—at all times relevant to this proceeding. The aggravated assault charge was subsequently dropped.

Bailey appeals the order revoking his probation on two grounds: (1) lack of adequate factual basis for the trial court's determinations, and (2) lack of sufficiently informed consent by Bailey to the pleas.

### 1. Lack of Factual Basis

Bailey claims the trial court lacked a sufficient factual basis for accepting his January 18 guilty plea and his October 30 guilty but mentally ill plea. See SDCL 23A-7-14. The burden is on Bailey to demonstrate this, *Spirit Track v. State*, 272 N.W.2d 803, 804 (S.D.1978), and we may not upset the trial court's factual findings unless they are clearly erroneous. SDCL 15-6-52(a); *Spirit Track*, at 804.

In *Spirit Track*, we found a lack of factual basis for the trial court's acceptance of the defendant's guilty plea. In that case, however, there was no testimony or evidence suggesting the defendant's guilt except for the defendant's plea, and that plea was contradicted by the defendant's own collateral remarks to the court. Here, there is evidence consistent with Bailey's original plea that he did in fact do damage to the motel room in excess of $200.00. The trial court also had the testimony of two psychiatrists that, consistent with Bailey's amended plea, he was mentally ill at the time of the offense. *See* SDCL 23A-7-16. In short, the finding of a factual basis for acceptance of the pleas is not clearly erroneous.

Bailey's brief suggests that a mentally ill person could not have formed the specific intent to *"intentionally* injure[ ], damage[ ], or destroy[ ]"* the motel property (emphasis supplied). SDCL 22-34-1. The simple answer is that SDCL 22-34-1 is not a specific intent crime. *State v. Balint*, 426 N.W.2d 316 (S.D.1988). *See also State v. Huber*, 356 N.W.2d 468 (S.D.1984). The crime as defined in the statute calls for intent as opposed to negligence or recklessness—not specific intent as opposed to general intent.

Bailey also claims insufficient evidence in the record to justify the ultimate decision to revoke probation. However, as Bailey concedes, the requisite standard of proof is low: as long as the court is "reasonably satisfied" that Bailey's probation conditions were violated, and the evidence is adequate to support that minimal level of certainty, the court has not abused its discretion in revoking probation and its decision will be upheld. *State v. Herrlein*, 424 N.W.2d 376, 377 (S.D.1988); *State v. Burkman*, 281 N.W.2d 442, 443 (S.D.1978).

Although conviction of a collateral offense is not a prerequisite to revocation,

*Herrlein,* 424 N.W.2d at 378 (Henderson, J., concurring in result), in this case the revocation was based on the allegation that Bailey had violated his probation *by breaking a law.* Therefore, the court had to be reasonably satisfied that Bailey committed aggravated assault.

In view of the extenuating circumstance of Bailey's attempts to get the medication he required and the psychiatric testimony about his degree of contact with reality, it is not a foregone conclusion that he would have been convicted of aggravated assault. *See, e.g., Robinson v. Solem,* 432 N.W.2d 246, 250 (S.D.1988). Nevertheless, there is sufficient evidence in the record to "reasonably satisfy" the trial court of Bailey's guilt. Therefore, its decision to revoke probation was not an abuse of discretion.

## 2. *Lack of Informed Consent*

Even assuming the court had an adequate factual basis for accepting Bailey's pleas and for revoking his probation, Bailey argues that he did not make the pleas "knowingly, voluntarily and intelligently."

As a matter of federal constitutional law, "[a] plea of guilty cannot stand unless the record in some way indicates a free and intelligent waiver by the defendant of his constitutional right to confront and cross-examine witnesses against him, his constitutional right to trial by jury, and his constitutional privilege against self-incrimination." *Stacey v. State,* 349 N.W.2d 439, 441 (S.D.1984) (citing *Boykin v. Alabama,* 395 U.S. 238, 89 S.Ct. 1709, 23 L.Ed.2d 274 (1969)). In addition to waivers of these three "Boykin rights," the record must disclose, as a matter of South Dakota law, that the defendant understood the nature and consequences of his plea. *Nachtigall v. Erickson,* 85 S.D. 122, 178 N.W.2d 198 (1970). While there is no set formula for establishing on the record the voluntariness of a guilty plea, "[t]he trial court must *normally* inform the defendant of these rights personally to insure that the record indicates a free and intelligent waiver of these rights." *Logan v. Solem,* 406 N.W.2d 714, 716–717 (S.D.1987) (emphasis original). The court's obligation to satisfy itself as to each of these four prerequisites before accepting a guilty or a guilty but mentally ill plea by "address[ing] the defendant personally in open court" and making a record of it are codified at SDCL 23A–7–4, 23A–7–5, 23A–7–15, and 23A–7–16.

Bailey suggests that his pleas could not possibly have been knowing, voluntary and intelligent because he was mentally ill when the pleas were entered. However, competence to plead is an issue of fact to be decided by the trial court, taking into consideration the totality of relevant circumstances. *Clark v. State,* 294 N.W.2d 916, 920 (S.D.1980). "In order to overturn an otherwise effective plea, a defendant claiming involuntariness based upon mental condition must show that the mental condition was so debilitating that she was unable to consult with counsel or unable to understand the proceedings." *State v. Lashwood,* 384 N.W.2d 319, 321 (S.D.1986).

■ This Bailey cannot show. Three psychiatrists who examined him over a five-month period, including his own defense expert, all agreed that he was competent to stand trial and to assist in his own defense. Bailey's attorney stated during the course of the October 30, 1989 sentencing that "as long as he's on his medications, he's fine and ... so I have no question that Dr. Lee might well have found that he was competent." Bailey's testimony of September 22 and his extended closing remarks of October 30 suggest no incapacity to understand the proceedings. Furthermore, the trial court recites in its Order Suspending Imposition of Sentence, and Bailey does not challenge, that "constitutional and statutory rights" as well as the defendant's understanding of the nature and consequences of his plea were covered at the January 18 arraignment. Therefore, we conclude Bailey has not shown that his mental condition precluded a voluntary plea and we affirm.

MILLER, C.J., and, WUEST and MORGAN, JJ., concur.

HENDERSON, J., dissents.

HENDERSON, Justice (dissenting).

As recent as our decision in *State v. Reed*, 451 N.W.2d 409 (S.D.1990), Henderson, J., dissenting, I reiterated my position that the GBMI statutes in South Dakota are unconstitutional: "These statutes are badly in need of due process correction." *Reed* at 411. Reed had appealed his convictions of guilty but mentally ill (GBMI) following a jury trial on two counts of Aggravated Assault. In *State v. Baker*, 440 N.W.2d 284 (S.D.1989), I also dissented on the grounds of the unconstitutionality of the GBMI statutes, set forth in my two dissenting opinions in *Robinson v. Solem*, 432 N.W.2d 246, 252–58 (S.D.1988) and *State v. Robinson*, 399 N.W.2d 324, 327–30 (S.D.1987). In the 1987 *Robinson* case, Justice Sabers, the majority writer in this opinion, joined my rationale on the unconstitutionality of the GBMI statutes of this state for the reason, *inter alia*, that the criteria was not followed as set forth by the United States Supreme Court in *Vitek v. Jones*, 445 U.S. 480, 494–96, 100 S.Ct. 1254, 1263–65, 63 L.Ed.2d 552, 565–67 (1980). In the 1988 *Robinson* case, I again attacked the constitutionality of the GBMI statutes. Again, the majority writer of this decision, expressed as follows: "Although I maintain my belief that SDCL 23A–27–38 is unconstitutional for reasons expressed in Justice Henderson's dissent in *Robinson I*, I concur in the result of this part of the case on the basis that Robinson's challenge to the constitutionality 23A–27–38 is premature." In the 1988 *Robinson* decision, Morgan, J., concurred in part and concurred in result in part. He expressed:

> My concurrence in the first issue is reluctant. In *State v. Robinson*, 399 N.W.2d 324 (S.D.1987), there was a strong dissent representing the views of two members of this court. I think that the views of that dissent were premature and that is why I concurred therein. I wish that the legislature would take heed of that dissent and strive as diligently to correct the statutory scheme as it has to change the burden of proof. It might avoid a possible future problem when a majority possibly would decide that the time has come to apply the reasoning of that dissent.

No heed has been taken by the Legislature and they have not diligently attempted to correct the statutory scheme. A perusal of the South Dakota Compiled Laws demonstrates that the Legislature has done nothing to meet the criteria of *Vitek*. Under SDCL 23A–27–38, South Dakota prison officials are not required to do anything to treat the prisoner; rather, the language is confined to merely examine the prisoner. Even if treatment is determined to be necessary and available, the prisoner (Bailey in this case) may be allowed to vegetate without treatment under SDCL 23A–27–38: "If the defendant is sentenced to the state penitentiary he shall undergo further examination *and may be given* the treatment that is psychiatrically indicated for his mental illness." (emphasis supplied mine). I cannot join any decision, in this Court, which expressly or impliedly approves of a sentence to the State Penitentiary where a man, such as Bailey, has been found guilty but mentally ill unless there is a guarantee of treatment. The State of South Dakota and its Parole Board, and the Warden of the State Penitentiary, should be *mandated* to secure help for the mentally ill. Incarceration of the mentally ill, without treatment, is barbaric.